CANFIELD S. MARTIN *v.* HIS CREDITORS, and the Creditors of T. J. CASEY & Co.

Alterations in a warehouse receipt after its delivery, are presumptive evidence of fraud ; and the authenticity and importance usually attached by the law to those instruments made in good faith, do not attach to such an instrument.

The *bona fide* possession of a warehouse receipt is legal evidence of possession ; and where different parties are in possession of such receipts, the earliest must prevail.

APPEAL from the Fourth District Court of New Orleans, *Price, J.* *Durant & Hornor,* for *Tufts & Hobart* and *Reed & Co. Gaither & McPheeters,* for *Parmele & Bro. Emerson & Huntington,* for *H. Hathaway. Singleton & Clack,* for *Keep, Bard & Co. Benjamin, Bradford & Finney,* for *H. Renshaw,* syndic.

BUCHANAN, J. There are three parties appellant.

1. *William H. Hathaway.*

2. *Tufts & Hobart.*

3. *Reed & Co.*

There was a fourth, *Parmele & Brother,* but their appeal has been dismissed on appellant's motion.

1. *Hathaway* claims the cargo of the ship William Sprague, under a sale made to him by *Tufts & Hobart,* for account of *Thomas J. Casey,* and a warehouse receipt signed by *Casey,* dated 2d January, 1858.

At the time of the trial of the various oppositions in the court below, it was proved that there remained in the salt warehouse of *Casey & Co.,* 12,650 bushels of the cargo of the William Sprague.

The judgment of the District Court awarded this salt to *Keep, Bard & Co.*

The evidence shows that the ship William Sprague arrived in the port of New Orleans, in December, 1856. Her cargo, consisting of 20,650 bushels of salt, was deposited in the warehouse of *T. J. Casey & Co.,* whose warehouseman, (*Hugh O'Donnell,*) delivered to the vessel when she was discharged, or sent to the office of the consignees in town, the following warehouse receipt, *written* by himself :

" December 26. Received from ship William Sprague, in warehouse, 10,325 tubs salt. HUGH O'DONNELL, Clerk for Brooklyn Warehouse."

But the receipt as exhibited in evidence, reads as follows :

" Arrived December 26. Received from ship William Sprague, in warehouse, for account of *Keep, Bard & Co.,* 10,325 tubs salt. Brooklyn Warehouse No. 3 ; storage chargeable to *T. J. Casey.*

HUGH O'DONNELL, Clerk for Brooklyn Warehouse.
T. J. CASEY."

All the words found in the second of the copies above, which are not in the first, are proved to have been interpolated after the receipt was delivered by *O'Donnell,* and to be in the handwriting of *Thomas J. Casey,* the insolvent, with the exception of the words, " for account of *Keep, Bard & Co.,*" which are in a handwriting which the witness, *O'Donnell,* does not recognize.

It is further proved by the book-keeper of *Keep, Bard & Co.,* examined as a

witness for them, that the cargo of the William Sprague was purchased of the importer, by *Keep, Bard & Co.* and *Thomas J. Casey*, on joint account; the profit or loss on the resale to be equally divided. This witness declares positively in his examination in chief, that the salt was paid for by *Keep, Bard & Co.* But on cross-examination, this fact is left in great doubt; and the broker, through whom the purchase was negotiated, declares that the cargo of the William Sprague, was sold by the consignee of the vessel, on the 22d of December, 1856, to *T. J. Casey*.

*Thomas J. Casey*, in May, 1857, borrowed of *Tufts & Hobart*, $11,917 75 on a pledge of this cargo of salt and two other cargoes; and *Tufts & Hobart*, on the 23d December, 1857, sold the cargo of the William Sprague, through the same broker, who had sold it to *Casey*. This sale was made with the knowledge of *Casey*, as proved by the broker; and was ratified by *Casey*, as shown by the warehouse receipt to *Hathaway*, of date the 2d of January, 1858, signed by *Casey* himself.

Under this state of facts, we think the court below erred in awarding the remnant of the William Sprague's cargo, remaining in the warehouse, to *Keep, Bard & Co.*

*Casey* is an absconding debtor, who has been sued for a forced surrender. His business was that of a salt warehouseman; and this record abounds with proof, that during a year and more previous to his absconding, he was engaged in defrauding the persons who had salt stored in his warehouse. The receipt, without a date, upon which the appellees, *Keep, Bard & Co.*, rely, suspicious as it is from the material alterations made in it after its delivery, becomes doubly so, from the proved dishonesty of the party who made those alterations.

The law attaches a great importance and authenticity to warehouse receipts; but we do not understand this authenticity as attaching to a receipt, which is proved to have been altered after its delivery by the warehouseman. The latter is without power to make such alteration; and the fraudulent intent of *Casey* in making this alteration in this instance, is evident.

Again, it is not correct to say, that the legal title of the salt was in *Keep, Bard & Co.* We have other evidence on this subject than their warehouse receipt, introduced without objection, and, in part, by themselves.

The most favorable view of the case of these appellees, under the somewhat conflicting testimony of their book-keeper and of the broker, is, that *Keep, Bard & Co.* were joint owners with *Casey*, of the cargo of the William Sprague.

The salt was, in this view, as much under the control of *Casey*, as under that of *Keep, Bard & Co.;* perhaps more so, as the storage was chargeable to *Casey*, by the terms of the interpolated receipt.

*Casey*, as we have seen, first pledged the salt to *Tufts & Hobart*, and then sold it to *Hathaway*, the appellant. He has, in all probability, defrauded his partners, *Keep, Bard & Co.;* but *Hathaway*, was no party to the fraud. His purchase was *bona fide*, and in our opinion *Keep, Bard & Co.* cannot repudiate it.

2. *Tufts & Hobart* claim the cargo of salt of the ship Bamberg, stored in *Casey & Co.'s* warehouse. This cargo was sold by the importers, *Harrison & Co.*, to *T. J. Casey*, on the 28th of November, 1857, being then on board ship, or stored in the bonded warehouse kept by *Casey & Co.*

*Thomas J. Casey & Co.* sold this cargo to *H. Leland & Co.*, on the 9th of December, 1857, and delivered to the purchasers, on the same day, a warehouse receipt for the same, being 7793 bags coarse Liverpool salt, and 1850 bags fine salt.

On the 18th December, 1857, *Casey* (for account of *T. J. Casey & Co.*) sold the same cargo of the Bamberg to *Rugely, Blair & Co.*, who sold to *Tufts & Hobart.* The cargo remained in the warehouse during these different sales.

The appellants, *Tufts & Hobart*, argue that their purchase of this salt should prevail over the anterior one of the appellees, *H. Leland & Co.*, because the sale to the latter was unaccompanied by delivery. The *bona fide* possession of a warehouse receipt, is legal evidence of possession ; and this is the character of the possession of both parties. The earliest must, therefore, prevail.

3. *Reed & Co.* claim 11,760 sacks salt in the Zinc Warehouse, upon a warehouse receipt. The Judge below was of opinion that the salt was not sufficiently identified to justify him in awarding it to this claimant.

The salt which remains on deposit in the Zinc Warehouse is 20.200 sacks. Of this amount, there was adjudged by the court below :

To *P. A. Giraud & Co* ..................................8,650 sacks.
To the State Bank ....................................3,470
To *Drury A. Harris* ..................................1,690

                                    13,810
Which deducted from total in store as above ...............20,200

Leaves amount not identified by any other claimant, in *Zinc Warehouse* ...................................... 6,390

As no opposition is made by any other party to this record, to the recovery, by appellants, of the six thousand three hundred and ninety sacks remaining in the Zinc Warehouse, as above, we think it equitable that the same should be awarded to the appellants, *Reed & Co.*, whom the record shows to have acted in good faith, and to have taken all precautions usual among men in trade who are dealing with those whose probity they do not suspect, to ascertain the existence of the merchandise respecting which they are dealing.

It is, therefore, adjudged and decreed, that the judgment of the District Court upon the claim of *William H. Hathaway*, be reversed ; that the syndic deliver to the appellant, *William H. Hathaway*, 12,650 bushels of salt of the cargo of the ship William Sprague, or so much thereof as may now remain on storage in Brooklyn Warehouse No. 3, upon said *Hathaway* paying to said syndic all costs and expenses for storage, reserving to said *Hathaway*, the right to contest the storage account for deficiency of salt ; that the claim of *Keep, Bard & Co.* to the cargo of the ship William Sprague, be dismissed ; that as regards the appellants, *Tufts & Hobart*, the judgment of the District Court be affirmed; that as regards the appellants, *Reed & Co.*, the judgment be amended, and that the syndic deliver to said *Reed & Co.*, 6,390 sacks of salt in the Zinc Warehouse, or so much as may be left therein, after satisfying the judgments of the District Court in favor of *P. A. Giraud & Co.*, of the Louisiana State Bank, and of *Drury A. Harris*, upon the same conditions as above expressed with regard to the appellant *Hathaway*.

It is lastly adjudged and decreed, that the costs of the interventions of the appellants and appellees in both courts, follow the judgments rendered upon the said interventions severally.